## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

C.S.,

Plaintiff,

v.                                        Case No.: **2:20-cv-00635-JES-MRM**

CHOICE HOTELS INTERNATIONAL, INC.;
ROBERT VOCISANO,

Defendants.

_____/

## PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY AND FOR ENTRY OF A PROTECTIVE ORDER

Plaintiff, C.S., pursuant to Fed. R. Civ. P. 26(c) and M.D. Fla. L.R. 3.01 and 3.04, hereby moves this Court to proceed anonymously and for the entry of a Protective Order.

## I.      INTRODUCTION

Plaintiff C.S. is a victim of sex trafficking pursuant to 22 U.S.C. § 7102 and 18 U.S.C. § 1950, and a victim of a "severe form of trafficking" as it is defined under 22 U.S.C § 7102 and Trafficking Victims Protection Reauthorization Act ("TVPRA") 18 U.S.C. § 1595.

Unfortunately, this litigation necessarily involves severely traumatic and stigmatizing facts and experiences, including criminal activity such as sexual abuse and rape. *See* Plaintiff's Complaint (ECF No. 1). Plaintiff's fear of violent retaliation from her traffickers for bringing the traffickers' criminal activity to public attention is real and reasonable, as is the stigma from employers and the community she might face should her true identity be revealed in the public record or to her trafficker(s). While Plaintiff understands Defendants' need to fully investigate and defend against the claims brought against them, Plaintiff requires protective measures while Defendants do so. Plaintiff has agreed to provide to the counsel for captioned Defendants her true

name, alias names used at any time (as recalled by Plaintiff) and her date of birth (hereinafter referred to as her "True Identity")  upon the entry of a Protective Order providing for certain protections that will prevent her traffickers from  knowing  her  identity. Plaintiff has proposed that (1) Plaintiff be permitted to proceed anonymously in all public filings and in all public Court proceedings until the time of trial (at which time anonymity may be revisited); (2) Plaintiff's True Identity remain confidential during the pendency of this action and after its conclusion with procedures for and limitations on disclosure; (3) Defendants not be permitted  to  disclose Plaintiff's True  Identity and/or  physical  description  to Plaintiff's trafficker(s) without filing a motion seeking permission of the Court. *See* Declaration of Randolph Janis ("Janis Decl."), Ex. 1.

## II.    STATEMENT OF RELEVANT FACTS

Plaintiff's traffickers forced Plaintiff to sexually service paying strangers while enduring brutal physical assaults, psychological torment, verbal abuse, and false imprisonment at Defendants' properties. *See* ECF No. 1.  Some of Plaintiff's traffickers have since been convicted of sex trafficking and are currently in prison. Janis Decl., *see also* Ex. 2 Throughout her trafficking ordeal, C.S.'s traffickers routinely harbored her at hotels, including Defendants' hotels. Plaintiff was coerced into commercial sex acts with multiple men per day, there was a steady stream of adult men entering and leaving her room. *See* ECF No. 1. Yet despite actual and/or constructive knowledge of its role, participation, and facilitation of commercial sex trafficking, including the trafficking of Plaintiff, and profited from those ventures; Defendants, did nothing to stop or prevent her ongoing torture. Plaintiff alleges with her Complaint on direct and indirect causes of action under the TVPRA, 18 U.S.C. § 1595, against the above captioned defendants for financially benefiting from enabling, harboring, and facilitating sex trafficking through its actions, and inactions. *Id*. Because of the sensitive and private nature of the issues involved and the potential for retaliation in response to her allegations, the Complaint identifies Plaintiff through her initials

2

only.

The Complaint pleads facts sufficient to support her anonymous status and demonstrate that her privacy and safety interests substantially outweigh any concerns about the inconvenience of nondisclosure of her identity to the public, her traffickers, or anyone associated with her traffickers. *See* ECF No. 1.  A defendant may be found civilly liable under the TVPRA for "knowingly benefit[ing] financially or by receiving anything of value"; (2) from participation in a venture; (3) that they "knew or should have known has engaged in" sex trafficking. 18 U.S.C. § 1595(a).

The "knowingly benefit" element of section 1595 "merely requires that Defendant knowingly receive a financial benefit." *B.M. v. Wyndham Hotels & Resorts, Inc*., et al., Case 5:20-cv-00656-BLF (N.D. Cal. Jul. 30, 2020), 2020 WL 42682 14, at *4.

Accordingly, Plaintiff's traffickers' testimony is not central to the issues in this case. Indeed, the trafficker(s)' testimony has ***no*** probative value as to whether Defendants knowingly benefited from their participation in what they knew or should have known was a sex trafficking venture. Any argument that Plaintiff's trafficker(s) are key witnesses in this case is nothing more than a veiled attempt to convince this Court that more than constructive knowledge is required to make a claim under § 1595 1 of the TVPRA. Instead, any communication with Plaintiff's trafficker(s) would serve only to intimidate Plaintiff and chill the speech of survivors.[1]

Plaintiff's traffickers are known to law enforcement to be dangerous and violent offenders. By way of example, Sheriff Kevin Rambosk said the two traffickers Keith Lewi and Gregory Hines "preyed on women and used violence to keep the women compliant", *See* Janis Decl., *see also* Ex.

---

[1] *See,       e.g.,*       https://www.daytondailynews.com/news/local/sex-trafficking-suspects-getting-out-charges/nKB05ilXRsoc7YvphhvWkO/ (describing instances in which sex trafficking suspects avoid charges due to victims being too afraid to testify or participate, demonstrating that fear is the largest barrier to prosecution) (last visited on February 24, 2021).

2. Gregory Hines is described in prior arrests as a "career criminal and habitual felony offender". Tattooed on his neck is the phrase "Death Before Dishonor." *Id.* Hines and Lewis were sentenced to 15 and eight years in prison, respectively, on human trafficking, prostitution, racketeering and drug charges. *Id.* Gregory Hines entered a no-contest plea in Collier County Circuit Court instead of standing trial next week on charges of human trafficking, racketeering, living off the earnings of prostitution, and narcotics trafficking. *Id.* The human trafficking investigation began in July when deputies received a tip that Hines was involved in a commercial sex operation. At the time, Hines was finishing a yearlong sentence in county jail on a grand theft auto charge. *Id.*

Deputies made contact with Hines at least four times since he was released from jail July 10. On Aug. 19, 2015, deputies said they found him sharing a hotel room with a Louisiana man who was wanted for murder there. *Id.* Four days after that, on Aug. 25, 2015 Hines was arrested at a La Quinta after witnesses said he punched a woman who came to collect money from him, then destroyed her phone and took her car keys. *Id.* Lewis, a Chicago native, is described in arrest reports as a career offender with "violent tendencies". *Id.*

Plaintiff has met and conferred with Defendants regarding the proposed discovery but has not been able to reach an agreement. *See* Janis Decl., *see also*, Ex. 3. Plaintiff's counsel hosted a meet and confer on February 12, 2021 and thereafter offered multiple major concessions in order to obviate court intervention, Plaintiff's counsel also volunteered to host a second meet and confer on February 19. *Id.* No defendant accepted said invitation and the concessions made unfortunately did not meet concessions from defense but rather obstinate opposition and hence this motion is being made.

The Parties disagree about limitations on disclosing Plaintiff's identity as follows: (1) whether potential, anticipated, or actual fact witnesses must sign an agreement to be bound by a

Protective Order prior to learning of Plaintiff's True Identity; (2) Whether Defendant may, unilaterally and without any oversight, disclose Plaintiff's True Identity to Plaintiff's trafficker(s); (3) Whether prior notice to Plaintiff's counsel and this Court is required in advance of disclosing Plaintiff's True Identity when compelled to do so by law, including (but not limited to) by subpoena, warrant, or court order; (4) Whether protections are warranted regarding the disclosure and use of Plaintiff's True Identity; and (5) Whether prior notice to Plaintiff's Counsel and this Court is required in advance of Defendants' attempted contact with Plaintiff's trafficker(s).

Plaintiff now seeks to prohibit Defendants from disclosing her name to her trafficker(s) and to impose other appropriate safeguards around Defendants' potential contact with Plaintiff's trafficker(s) in an attempt to keep herself safe. Plaintiff also seeks reasonable restrictions on Defendants' ability to disclose Plaintiff's True Identity to other "fact witnesses" in the subject Protective Order.

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 26, a court may "for good cause, issue an order to protect a party or person from *annoyance, embarrassment, oppression, or undue burden* or expense" by (1) prohibiting disclosure or discovery; (2) *conditioning disclosure or discovery on specified terms*; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1).

Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."

The party moving for a protective order bears the burden of showing specific prejudice or harm will result if no protective order is granted. If a court finds that particularized harm will result from disclosure of information to the public, then it balances the public and private interests to

decide whether a protective order is necessary.

In balancing private and public interests, courts have looked to these factors: (1) whether disclosure will violate any privacy interests; (2) whether the information being sought is for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefiting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

## IV.   ARGUMENT

### A.   Plaintiff Should be Allowed to Continue to Proceed with Her Action Anonymously

Plaintiff respectfully requests that she be allowed to continue to proceed with her action anonymously.  In the 11th Circuit, "[a] party may proceed anonymously in a civil suit in federal court by showing that [s]he 'has a substantial privacy right which outweighs the "customary and constitutionally-embedded presumption of  openness in judicial proceedings."'" *Plaintiff B v. Francis*, 631 F.3d 1310, 1315-1316 (11th Cir. 2011)(citations omitted); *Roe v. Aware Woman Ctr. for Choice,* 253 F.3d 678, 685 (11th Cir. 2001). "In evaluating whether a plaintiff has shown that [s]he has such a right, the court 'should carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" *Plaintiff B*, 631 F.3d at 1316.

As relevant here, a court determining whether to allow a plaintiff to proceed anonymously must ask the following questions: will the Plaintiff be required to disclose information of the utmost intimacy if her name is disclosed.  *Id.*  The answer here is an affirmative yes.

Plaintiff's status as a victim of sex trafficking is highly sensitive, personal and private information that implicitly exposes the Plaintiff as a prostituted person as well as a victim of repeated sexual abuse.  Discovery will involve descriptions of the Plaintiff in various stages of nudity and engaged in explicit sexual conduct that she was forced and coerced to engage in by her sexual traffickers.   It is of the utmost intimacy.  *See Fla. Abolitionist v. Backpage.com LLC*, 2017 U.S. Dist. LEXIS 75744 *2-3 (M.D.Fl. 2017)("These matters go far beyond simple embarrassment, they are of a deeply personal and sexual nature. In fact, it is hard to imagine matters of a more sensitive or personal nature. Jane Doe's allegations make it reasonably foreseeable that the disclosure of her identity in this action will cause her social stigmatization.")

To be certain, Plaintiff does not object to providing her true full name to the captioned Defendants  subject to a protective order being an entered that will address and limit how her name can be further disseminated by Defendant and requiring that any documents containing her true name be filed under seal.  Because of this, granting Plaintiff's request will in no way prejudice the Defendants' ability to defend itself in this ligation.  *See Fla. Abolitionist*, 2017 U.S. Dist. LEXIS 75744 *3 (permitting the plaintiff to proceed anonymously but requiring she share her identity with defendants, in a non-public manner, and prohibiting defendants and their counsel from disclosing her true identity to the general public without prior Court approval).

To this end, Plaintiff respectfully submits that this Court be guided by the decisions of other Courts overseeing sexual trafficking actions that have allowed these victims to proceed anonymously.  By way of example, annexed hereto as Ex. 4 is a copy of an Order by Judge Brian M. Cogan of the Eastern District of New York issuing a similar Order to that Ordered in the case of *Fla. Abolitionist*, 2017 U.S. Dist. LEXIS 75744.

To hold otherwise and require the Plaintiff to disclose her identify in public court records in order to assert her claims against the Defendants would only serve to further victimize the Plaintiff and compound the same harm she seeks to redress through this litigation. Accordingly, Plaintiff respectfully requests that she be allowed to proceed anonymously in the present action.

Despite the real danger to Plaintiff, Plaintiff has agreed to provide to the respective counsel for Defendants her true name, alias names used at any time (as recalled by Plaintiff) and her date of birth (hereinafter referred to as her "True Identity") as well as the names and aliases of her trafficker(s), upon the entry of a Protective Order. In return, Plaintiff seeks certain protections that will prevent her trafficker(s) from being informed of and/or discovery her identity in order to protect herself from the threat of retaliation. In light of the severe abuse inflicted on her by her trafficker(s), Plaintiff has a credible fear for the physical safety of herself and her family, and the protections in the Proposed Protective Order are essential to her ability to safely pursue the legal recourse to which she is entitled. *See* ECF No. 1.

Plaintiff has proposed that: (1) Plaintiff be permitted to proceed anonymously in all public filings and in all public Court proceedings until the time of trial; (2) Plaintiff's True Identity remain confidential throughout this action and after its conclusion with procedures for and limitations on disclosure; (3) Defendants not be permitted to disclose Plaintiff's True Identity and/or physical description to Plaintiff's trafficker(s) or affiliates or to contact Plaintiff's trafficker(s) without providing Plaintiff notice and filing a motion seeking permission of the Court; (4) Defendants be prohibited from disclosing trafficker's name or other identifying information on the public docket in this case.

**B.  The Need To Protect The Privacy Of Crime Victims To Prevent Retaliation And Embarrassment Is Well Established.**

    **1.  Federal and State laws recognize various crime victims' rights, such as**

**protection from perpetrators**.

Various federal and state laws recognize certain protections for crime victims, such as a right to "reasonable protection" from the perpetrator. *See, e.g.*, 18 U.S.C. § 3771 (a)(1) (crime victims have the "right to be reasonably protected from the accused").

Importantly, both state and federal crime victims' rights exist despite criminal defendants' competing constitutional rights, including the right to confront witnesses against them. *See* U.S. CONST. amend. VI. Here, *no such constitutional rights* are implicated. This is civil litigation, and the Defendants have no Sixth Amendment rights in this case. Moreover, as acknowledged by courts and legislatures across the country, the risk of harm or harassment should Plaintiff's trafficker learn of her accusations are high. Plaintiff's trafficker previously attacked, drugged, and forced her into sexual acts, and Plaintiff has a credible fear that her trafficker – through his associates or otherwise -- might harm her again should he learn of this litigation. Therefore, this Court should grant Plaintiff's motion, and minimize the risk of Plaintiff's trafficker learning her identity to the greatest extent possible.

## 2. Courts in the Eleventh Circuit have consistently recognized the need for anonymity in court proceedings involving victims of sexual assault.

In the Eleventh Circuit a party may preserve his or her anonymity in judicial proceedings in special circumstances where the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity. Such circumstances can exist when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment. Thus, courts have permitted plaintiffs to use pseudonyms in three situations: (1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature; and (3) when the anonymous party is compelled to admit his or her intention to engage in

illegal conduct, thereby risking criminal prosecution. When the plaintiff has demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings under Rule 16(b), and to issue protective orders limiting disclosure of the party's name under Rule 26(c), to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case. Courts recognize that plaintiffs may be permitted to proceed anonymously where there are allegations of sexual assault, and they may fear public exposure and the stigma of having been a victim to such a crime.  The experience of sexual abuse can be deeply psychologically traumatic, and public knowledge of such abuse can trigger new trauma even years after the fact. Accordingly, district courts in the Eleventh Circuit have  recognized that allegations involving sexual assault warrant proceeding under a pseudonym.

Courts in the Eleventh Circuit have found that allowing victims of sexual assault or harassment to proceed anonymously serves a strong public interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.

### C. Plaintiff's Proposed Protective Order Appropriately Balances Defendants' Need To Investigate And Prepare A Defense With Plaintiff's Valid Safety Concerns.

Plaintiff's Proposed Protective Order has been carefully drafted to allow Defendants to investigate and defend against Plaintiff's claims while also addressing Plaintiff's concerns that she will be subjected to retaliation for disclosing her trafficker's identity. Implicit in Defendants' refusal to compromise with Plaintiff is the argument that Plaintiff has to prove she was a victim of a sex trafficking venture committed by specific traffickers, and that Defendants' relationship with a particular trafficking under the "participation in a venture" prong of the Section 1595 was one where Defendants knowingly assisting, supporting, or facilitating sex trafficking. This is not the case. Defendants need not have actual knowledge of the specific instances of sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA,

otherwise the "should have known" language in section 1595(a) would be meaningless.

1. <u>**Plaintiff should be permitted to proceed anonymously in all pretrial public filings until the time of trial.**</u>

District courts in the Eleventh Circuit have repeatedly recognized that allegations involving sexual assault warrant proceeding anonymously to prevent psychological trauma, embarrassment, and the possibility of retaliation.

Here, Plaintiff should also be permitted to pursue this action anonymously. Plaintiff's need for anonymity does not present any prejudice to Defendants and outweighs the public's interest in knowing her identity. If Plaintiff's True Identity is not shielded, she reasonably fears that she will be subject to harm and retaliation from her trafficker(s) and his associates. It is well known that substantial stigma attached to sexual assault can and does detrimentally affect victims' employment and social prospects.

Furthermore, Plaintiff reasonably fears that revealing her identity could harm her professional relationships and future career aspirations. Lastly, other victims of sexual assault will likely be deterred from pursuing the vindication of their legal rights against those who caused their injuries if Plaintiff is required to reveal her identity. To this end, measures that may have a chilling effect on a party's willingness to litigate "violations of statues are generally considered against public policy." *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1073 (9th Cir. 2000*)* Moreover, while the presumptive openness of proceedings is a cornerstone of the American legal system, there is a greater interest in affording victimized plaintiffs their day in court without the bullying of corporations who hope to deter her litigation through the force of identification. *See Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006).

Thus, the public arguably has a strong interest in protecting Plaintiff's identity and

Defendants will not be prejudiced if Plaintiff is permitted to proceed anonymously because she will disclose her identity to Defendants in a non-public manner. *See Roe v. Aware Woman Ctr. for Choice,* 253 F.3d 678, 687(11th Cir. 2001). Similarly, allowing Plaintiff to proceed under a pseudonym will not meaningfully offend the public's interest in access to judicial proceedings, as all other aspects of the record will remain public. *See* Ex. 4. While denying anonymity to Plaintiff, who is a victim of sex trafficking, would only further allow the offenders to continue without detection by the law as they have done for decades.

## 2. Protections Are Needed To Prevent Plaintiff's Trafficker(s) From Learning Of Plaintiff's True Identity.

While it is true that as a general rule, parties are free to interview potential witnesses so long as no privilege bars the conversation, even when no privilege applies, a court must balance the relevant factors. Certainly, this reasoning is even more applicable when not only a party's privacy is in jeopardy, but their physical safety and well-being is in jeopardy. Here, Plaintiff's Proposed Protective Order is based entirely on protecting Plaintiff from further abuse at the hands of her trafficker(s), who she knows as able to perpetrate violence and abuse against her.

Plaintiff's Proposed Protective Order seeks protections to prevent Defendants from disclosing Plaintiff's identity to Plaintiff's trafficker(s). Specifically that, (1) the Parties shall not disclose the Plaintiff's True Identity and/or physical description (such as gender, ethnicity, hair color, eye color, age, height, weight, etc.) to Plaintiff's traffickers (including their colleagues, co-conspirators, or anyone else who would be reasonably likely to share Plaintiff's True Identity with her traffickers); and (2) Defendants shall not contact or attempt to contact Plaintiff's trafficker(s) without first providing notice to counsel and obtaining permission to do so by Order of this Court. Proposed Protective Order (annexed hereto as Ex. 1.)

Such procedures are designed to balance Defendants' need to conduct internal

investigations and defend against Plaintiff's claims while accounting for the real threats to Plaintiff's physical and mental well-being.

> **a. Protections are needed to prevent defendant from disclosing Plaintiff's identity to Plaintiff's trafficker(s) or known associates.**

As an initial matter, it is unclear how prohibiting disclosure of Plaintiff's identity to her trafficker(s) would inhibit Defendants' ability to defend the case. Two traffickers were prosecuted and convicted, Defendants can find the criminal case details from public sources. *See* Case No. 11-2016-CF0000087, Twentieth Judicial Circuit, Collier County. If not convicted, a trafficker(s) would either invoke their Fifth Amendment privilege against self-incrimination or would have every reason to lie and are thus unreliable. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2007) (Fifth Amendment's protections against self-incrimination can be asserted in civil proceedings "where the person invoking the privilege reasonably believes that that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner") (citations omitted).

Defendants can check their internal records for individuals who paid cash for rooms or rented them for years on end. Those records will either confirm or undermine Plaintiff's claims (to the extent real names were used to rent such rooms) but they will not be enhanced by any trafficker's testimony in this case. *See, e.g., E.E.O.C. v. Ceridian Corp.*, 610 F. Supp. 2d 995, 997 (D. Minn. 2008) (not permitting discovery of tax returns where the requesting party could get the necessary information through other means). Defendants have access to sufficient facts alleged in the Complaint from which it can investigate Plaintiff's claims. Once a Protective Order is entered, Defendants will have access to Plaintiff's name and details about the trafficker(s) known to Plaintiff. This information is sufficient to allow a proper investigation by Defendants without putting Plaintiff in danger. At best, any direct evidence offered by the trafficker(s) will be highly

suspect, and his/their presence would only serve to intimidate, harass, and re-traumatize Plaintiff and quite likely put her in danger. Fear of reprisal is a significant deterrent for survivors such as Plaintiff to come forward in the first place, and the traffickers' presence would put Plaintiff's safety at risk in exchange for doubtful gain for the Defendants. Recognizing these dynamics, many jurisdictions explicitly protect crime victims' rights. *See* discussion supra at § A.

Based on courts' discretion to protect litigants from harassment and abuse in the discovery process, the particular facts of this case, and the crime victims' rights currently recognized in multiple jurisdictions including Florida, this Court should enter a protective order limiting the disclosure of Plaintiff's True Identity to her trafficker(s). Adopting Plaintiff's Proposed Protective Order would remove the risks inherent in reaching out to violent criminals about their victims. Good cause exists to limit disclosure of Plaintiff's identity to the trafficker(s), because such disclosure would create an "undue burden" for Plaintiff and put her at severe risk of serious harm. While it is true that Plaintiff and her trafficker(s) have known each other in the past, and Plaintiff's identity is not a mystery in this sense, Plaintiff's involvement in this case is not known to her traffickers. It is understood that Plaintiff's trafficker(s) have victimized multiple women— as many traffickers do—so even learning that a lawsuit such as this is ongoing would not necessarily reveal to the traffickers which of their victims was pursuing the action. However, Plaintiff's initials and identity are the essential link that would allow her traffickers to identify her and target her—not only for fear of their own prosecution, but to set an example for other victims to not come forward as Plaintiff has.

An order limiting disclosure to her trafficker(s) would prevent the Defendants from revealing Plaintiff's True Identity. Due to the dubious probative value of her trafficker's involvement, and the potential for harassment, intimidation, physical harm, and psychological

trauma for Plaintiff, the basis for limiting discovery disclosures is consistent with several other bases that federal courts have found for issuing protective orders.

Plaintiff is a survivor of sex trafficking and sexual assault, and thus should be afforded additional protections, particularly for her privacy. Moreover, the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes, which has been repeatedly recognized in claims permitting victims of sexual assault to proceed anonymously.

Even in criminal cases, The Eleventh Circuit has recognized that discovery in criminal matters is meant to be a private process between the litigants and that discovery materials should generally not be disclosed outside of those individuals who are necessary for preparation for trial. *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986). Protective orders limiting the dissemination of discovery have been upheld, even in criminal cases. *See, e.g., United States v. Fischer*, 137 F.3d 1158, 1165 (9th Cir. 1998) (finding that the district court did not abuse its discretion where it limited a defendant's access to discovery material provided by the government); *United States v. Salemme*, 978 F. Supp. 386, 389-90 (D. Mass. 1997) (protective order limiting the dissemination of discovery to anyone who was not necessary to assist counsel in a RICO conspiracy case).

A protective order related to dissemination of Plaintiff's identity, especially given the sensitive nature of this case, is appropriate. Unrestricted disclosure of Plaintiff's identifying information in this case could adversely impact both the privacy of victims and the course of the proceedings in this case.

The Court may, in its discretion, protect a party from the breadth of a discovery request, for a showing of good cause. The court's decision to grant a motion for protective order does not

depend on a privilege; rather, a protective order shields a party or person from annoyance, embarrassment, oppression, undue burden, or expense. *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005).

The Court has broad discretion in granting a Motion for Protective Order. *Thomas v. International Bus. Machs.* 48 F. 3d 478, 482 (10th Cir. 1995).

The Court must balance the hardship to the party against whom discovery is sought against the probative value of the information to the other party. James Wm. Moore, Moore Federal Practice Vol. 6 § 26.101[1][c] (3d ed., Lexis Nexis 2006); *see also Farnsworth v. Proctor & Gamble C*o., 458 F. 2d 1545, 1547 (11th Cir. 1985).

**b. Protections are needed prior to Defendants' potential contact with Plaintiff's trafficker(s).**

Plaintiff's Proposed Order also requires Defendants to provide prior notice to Plaintiff's and obtain permission from the Court in advance of contacting Plaintiff's trafficker(s). Such protective provisions allow Defendants to internally investigate Plaintiff's trafficker but narrow the possibility that inadvertent disclosure of Plaintiff's identity to her trafficker(s) may occur, by providing notice to Plaintiff and this Court when anticipated disclosure may occur. Defendants have no reasonable basis to oppose this restriction.

These protections are similar to Protective Orders that have been determined by courts or stipulated to in other similar cases pending in other federal courts. *See e.g.*, *A.C. v. Red Roof Inns*, Inc., No. 2:19-cv-4965, 2020 WL 5361731 * 5 ("Prior to a Defendant's contact with Plaintiff's alleged trafficker, the parties must first meet and confer. If no agreement is reached, Defendant may file a motion seeking an order from the Court in which it will explain the necessity of the disclosure."); *M.L. v. Craigslist, Inc.*, No. 3:19-06153-BHS-TLF, 2020 WL 570835 (W.D. Wash. Sept. 24, 2020) (Court modified protective order to include a provision preventing the disclosure

16

of Plaintiff's True Identity to the known trafficker(s) or trafficker's absent court order); *S.J. v. Choice Hotels Int'l, Inc.*, No:19- cv-06071-BMC (E.D.N.Y. April 9, 2020) (stipulated protective order requiring the defendant to send a letter to the court *ex parte* and in camera explaining to whom the plaintiff's identity will be disclosed and why this person may have important information relevant to the investigation and defense).

The procedures also balance Defendants' need to conduct internal investigations and defend against Plaintiff's claims while accounting for the very real threats to Plaintiff's safety and well-being. The proposed procedures do allow Defendants to contact the Plaintiff's traffickers, provided certain precautions are taken to protect Plaintiff's identity from her trafficker(s) and that the Court agrees such contact is justified and necessary.

From a practical stand point, providing notice to Plaintiff and this Court prior to making contact with Plaintiff's traffickers minimizes the opportunity for inadvertent disclosure of her identity to occur, whether by fault of Defendants or the traffickers' own investigation. Additionally, it is reasonable for Plaintiff to take additional precautions in her daily life for a time following the Defendants' attempted contact with her trafficker(s). If Plaintiff is unaware that her trafficker(s) has been contacted, there is a higher likelihood that the trafficker could catch her off guard. The requirement that Defendants inform Plaintiff and this Court that they will imminently contact her trafficker(s) could be the difference between her successfully keeping herself safe or not, and it poses little to no obstacle to Defendants' effective preparation of a defense. If Defendants do not wish for Plaintiff to be placed in unnecessary danger, there is no reasonable basis on which to oppose this precaution.

Despite repeated attempts by Plaintiff to discuss her proposed protections, Defendants are unwilling to agree to any compromise procedure relating to the trafficker(s) other than unlimited

discovery, and its unlimited ability to disclose Plaintiff's identity to her trafficker(s). Such a rigid approach and unwavering position support Plaintiff's argument that Defendants' position is solely intended to intimidate and cause the chilling effect that would unacceptably burden the public interest in stopping the atrocity of human trafficking and may put Plaintiff's life and/or well-being in grave danger.

### 3. **Plaintiff's proposed protections regarding disclosure of Plaintiff's True Identity to fact witnesses is warranted.**

Plaintiff's Proposed Protective Order seeks to impose reasonable requirements upon Defendants prior to the disclosure of Plaintiff's identity to fact witnesses. Specifically, Plaintiff requires that any potential, anticipated, or actual fact witnesses sign an agreement to be bound by the respective protective orders entered in this case before receiving Plaintiff's True Identity. This modest restriction on Defendants' ability to disseminate Plaintiff's identity would not overly burden Defendants but would serve the important purpose of protecting Plaintiff from any inadvertent disclosure of her identity to Plaintiff's trafficker(s). In addition, this provision of Plaintiff's Protective Order pertains only to witnesses whose testimony will depend on knowing the Plaintiff's identity. The only witnesses who should fall into this category are witnesses who were directly involved in the actual trafficking venture. Witnesses pertinent to Defendants' brand-wide policies or related industry standards should have no need for the Plaintiff's identity. Other potential fact witnesses may include other guests of the hotels, which would not present a substantial a burden on Defendants to provide advance notice because it will not be a large number of people. Moreover, it is unlikely that the testimony of other guests not involved in the actual trafficking venture would hinge upon the disclosure of Plaintiff's identity. As discussed in the previous section, this notice could be the deciding factor in Plaintiff's ability to maintain her safety, and it does not meaningfully inhibit the Defendants' ability to defend the case.

In short, freely disseminating Plaintiff's identity to any "fact witness" without first requiring them to sign an agreement to be bound by the protective order entered in this case could put Plaintiff in jeopardy. Defendants are unable to articulate a basis for why their investigation demands such open-ended disclosures, other than to harass and intimidate Plaintiff in hopes she will dismiss her case rather than be subjected to the risk of harm or injury by her trafficker(s).[2] Plaintiff's approach strikes the appropriate balance between Plaintiff's safety and Defendants' desire to do broad-based discovery as well as any due process concerns by allowing the Court to weigh in on the propriety of any third- party disclosure of Plaintiff's identity.

## V.   **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiff's Motion to proceed anonymously and for a Protective Order that will provide for additional disclosure protections.

Dated: February 24, 2021

*/s/ Sharon M Hanlon*
Sharon M Hanlon, Esq
FL Bar Number: 946620
Law Office of Sharon M. Hanlon, PA
5633 Naples Boulevard
Naples, Florida 34109
Telephone: (239) 598-3222
shanlon@zelmanandhanlon.com

*/s/ Yale T Freeman*
Yale T. Freeman, Esq
FL Bar Number: 161855
Yale T. Freeman, PA
7257 NW 4th Boulevard, Suite 82
Gainesville, FL 32607
Telephone: (239) 530-2500
ytfreeman@ytfreemanlaw.com

*/s/Randolph Janis*
Randolph Janis, Esq.

---

[2] Notably, Defendants' proposed Protective Order for Confidentiality of Documents requires that information designated as "highly confidential" may be disclosed to fact witnesses subject to a stipulation that such witnesses needed to know the information.

Admitted *Pro Hac Vice*
Virginia E. Anello, Esq.
Admitted *Pro Hac Vice*
Diana Yastrovskaya, Esq.
Admitted *Pro Hac Vice* in 2:20-cv-00118
Douglas and London, P.C
59 Maiden Lane, 6th Floor
New York, NY 10038
Telephone: (212) 566-7500
Fax: (212) 566-7501
rjanis@douglasandlondon.com
vanello@douglasandlondon.com
dyastrovskaya@douglasandlondon.com

*Attorneys for Plaintiff C.S.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered with CM/ECF.


*/s/ Randolph Janis*